```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
KRISTEN JARRY,                      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )   C.A. No. 21-047 WES
                                    )
ECC CORPORATION, AND                )
JOHN CARTIER,                       )
                                    )
          Defendants.               )
_____ )
```

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Dismiss, ECF No. 9, filed by ECC Corporation and its chief executive officer, Mr. John Cartier (collectively "Defendants"). For the reasons explained below, Defendants' Motion is DENIED in part and GRANTED in part.

I.  BACKGROUND

In January 2020, just prior to the advent of the COVID-19 pandemic, Ms. Kristen Jarry was hired by Defendants as an office manager. See Am. Compl. ¶ 3, ECF No. 8. From the start of the pandemic in the spring of 2020 through early summer 2020, she worked remotely from home, as did all ECC employees. See id. ¶ 6. As the summer unfolded, employees of ECC Corporation began returning to the office, at which point Ms. Jarry requested to continue working from home due to her child's summer school

schedule. Id. ¶ 7. Her request was denied.[1] Id. ¶ 8. Ms. Jarry alleges once she became aware her son's school would be partially remote (hybrid) for the 2020-2021 school year, she again requested to work from home for the three days each week that her son would be attending school remotely. Id. ¶¶ 9, 12-13. Again, her request was denied and instead, Defendants offered to allow her to work from home on Fridays, which were already half-day workdays. Id. ¶ 15. Nonetheless, Ms. Jarry continued to work in-person through the summer. See Defs.' Mot. Dismiss 9, ECF No. 9.

In early September 2020, days after Ms. Jarry's last request was denied, Mr. Cartier terminated her employment, citing a work product error that occurred in June of 2020. See Am. Compl. ¶¶ 12, 21. Ms. Jarry contends that this work was reviewed and accepted by Mr. Cartier at that time and that the fault he finds with it now amounts to a purely pretextual reason for her termination. See Am. Compl. ¶¶ 21-22. Defendants maintain Ms. Jarry's termination was for cause based on the work product error, and that her firing had nothing to do with her requests to work remotely. See Mot. Dismiss 6-9.

Shortly after her termination, Ms. Jarry filed a three-count Complaint against Defendants, alleging violations of the Families

---

[1] Plaintiff's ten-year-old son suffers from learning disabilities, rendering him unable to be left home unsupervised to attend school remotely; Plaintiff avers she had no other childcare options. See Am. Compl. ¶¶ 10-11, 14.

First Coronavirus Response Act ("FFCRA"), the Rhode Island Healthy and Safe Families and Workplaces Act, and tortious interference with economic advantage.  See Am. Compl. ¶¶ 25-53.  Ms. Jarry's FFCRA claim specifically alleges Defendants violated both the interference and retaliation protections afforded to employees under the Family Medical Leave Act ("FMLA"), which the FFCRA extended to employees needing leave for reasons specific to the COVID-19 pandemic.  Id. ¶ 36.

II. LEGAL STANDARD

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff.  See Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008); McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006).  The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In making this assessment, the Court should ignore legal conclusions that do not rest on pleaded facts.  Menard v. CSX Transp., Inc., 698 F.3d 40, 44-45 & n.5 (1st Cir. 2012).  "This is so not only of legal boilerplate (e.g., 'conspiracy,' 'willfully') but also of assertions nominally cast in factual terms but so

general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint." Id. at 45.

III. DISCUSSION

    A. FFCRA's Enforcement Under FMLA

In addition to other provisions not relevant here, the FFCRA amends the FMLA to provide protected leave for employees with a "qualifying need related to a public health emergency." See H.R. 6201, 116th Cong. §§ 3101-06 (2020). This new provision, the Extended Family Medical Leave Emergency Act ("EFMLEA"), became effective on April 1, 2020, and expired on December 31, 2020. Due to this narrow timeframe, "there is scant caselaw interpreting the possible issues arising from the statute or the regulations." Colombe v. SGN, Inc., No. 5:20-CV-374-REW, 2021 WL 1198304, at *2 (E.D. Ky. Mar. 28, 2021) (citing Valdivia v. Paducah Ctr. For Health & Rehab., LLC, No. 5:20-CV-00087-TBR, 2020 WL 7364986, at *3 (W.D. Ky. Dec. 15, 2020) (noting the dearth of case law)). The Department of Labor, however, issued regulations clarifying that the anti-retaliation and anti-interference provisions of the FMLA, 29 U.S.C. § 2615, apply fully to rights created by the EFMLEA. See 29 C.F.R. § 826.151(a) (2020); Figueroa Collazo v. Ferrovial Construcción PR, LLC, CIVIL NO. 20-1612 (DRD), 2021 WL 4482268, *5 (D.P.R. Sept. 30, 2021) (appeal pending) ("The acts that are prohibited as to FMLA, are equally prohibited as to EFMLEA, such

4

as, interference with the exercise of rights, discrimination, and interference of proceedings."). For this reason, the Court looks not only to the plain text of the statute and relevant regulations, but also to FMLA cases more broadly to construe the EFMLEA.

The EFMLEA defines "public health emergency leave" as the need to care for an employee's son or daughter under eighteen years of age if, due to a public health emergency, the child's school or place of care has been closed or childcare provider is unavailable. See 29 U.S.C. § 2620(a)(2)(A). The Department of Labor has clarified that employees may be eligible for EFMLEA leave if a child's school is either: (1) closed for in-person learning but operating on a full-time remote schedule, provided the employee needs to care for the child and there is no other suitable person available to do so; or (2) opening on a hybrid schedule where the child attends school in-person some days and remotely other days. See Families First Coronavirus Response Act: Questions and Answers, U.S. Dep't of Lab. (updated August 27, 2020), https://www.dol.gov/agencies/whd/pandemic/ffcra-questions. The employee qualifies for leave on the remote learning days, provided the employee needs to care for the child and there is no other suitable person available to do so. Id.

The EFMLEA also imposes an affirmative duty on employers to conspicuously post a notice on their premises explaining these specific leave rights. See FFCRA, Pub. L. No. 116-127, § 5103,

5

134 Stat. 178, 196 (2020); see also 29 C.F.R. § 826.80 (2020). Employers can satisfy the posting requirement by either distributing the notice online, posting the notice on the employer's website, or mailing or emailing the notice to employees. 29 C.F.R. § 826.80(a).

B. Count I: Ms. Jarry's EFMLA Claim

Ms. Jarry argues that by denying her multiple requests to work remotely and terminating her because of her requests, Defendants interfered with her right to EFFMLA leave and retaliated against her for attempting to exercise that right. See Am. Compl. 2-3. To succeed on an interference claim, a plaintiff must show: (1) she is an eligible employee; (2) her employer is covered by the FMLA and EMFLEA; (3) her situation entitled her to leave; (4) she gave adequate notice to her employer; and (5) the employer nonetheless denied her leave. See Washington v. Honeywell Int'l, Inc., 323 F. Supp. 3d 309, 315-316 (D.R.I. 2018). For an EFMLEA retaliation claim, a plaintiff must show that: (1) she availed herself of a protected right; (2) the employer took an adverse action; and (3) there is a causal relationship between the employee's protected activity and the adverse action. See Gomes, 504 F. Supp. 3d at 18 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998)).

For her interference claim, it is undisputed that Plaintiff is an eligible employee, that her employer is covered by the FMLA

6

and EFMLEA, and that her situation qualified for leave under the EFMLEA. See Mot. Dismiss 3, n.1. So, at this stage, the viability of that claim hinges on whether Ms. Jarry's requests to intermittently work from home may be reasonably construed as giving adequate notice to her employer that she was invoking her protected right to leave. For her retaliation claim, it is likewise undisputed that a firing constitutes an adverse employment action. Her retaliation claim therefore turns on the same question: whether she adequately availed herself of a protected right to leave by asking to work remotely.

The critical determination is whether the information communicated to the Defendants was sufficient to reasonably determine Ms. Jarry was requesting time off. See Family and Medical Leave Act of 1993, § 105(a)(1), 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.303(a)-(b) (2021). An "employee need not expressly assert rights under the FMLA or even mention the FMLA" to invoke their right to FMLA leave. 29 C.F.R. § 825.303(b); see also Harrigan v. Dana Corp., 612 F. Supp. 2d 929, 941 (N.D. Ohio 2009). What is reasonable depends upon the facts and circumstances of each case. See 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.303(b); see also Treadaway v. Big Red Powersports, LLC, 611 F. Supp. 2d 768, 779 (E.D. Tenn. 2009).

In the context of the COVID-19 Pandemic, at least one court has concluded that an employee's request to work from home does

7

not count as a request for leave, because working remotely and taking protected time off are substantially different requests. See Figueroa Collazo, 2021 WL 4482268 at *8 ("Even if the EFMLEA and EPSLA are to be construed liberally, in reality, Plaintiff merely requested a hybrid work accommodation, not paid leave pursuant to the federal legislation. Therefore, requesting telework cannot be considered a protected conduct as suggested by Plaintiff."). The Court agrees. Therefore, because Ms. Jarry never gave her employer adequate notice that she was invoking her right to leave, her EFMLEA retaliation claim must fail.

In Figuero Collazo, however, there was no question that the plaintiff had received adequate notice of her rights under the FLMA and EFMLEA. Id. at *2. This fact makes a critical difference for Ms. Jarry's interference claim because an outright denial is not the only way that an employer can interfere with an employee's FMLA or EFMLEA rights. See Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 423 (1st Cir. 2014).

Indeed, an "employer's failure to follow the FMLA [and EFMLEA] notice requirements may 'constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights,'" when that failure actually harms the employee. Id. (quoting 29 C.F.R. § 825.300(b)(2)(2021)); see also DeFilippo v. CBS Corp., No. CIV.A. 12-11109-JGD, 2013 WL 4737182, at *3 (D. Mass. Sept. 3, 2013) ("[C]ourts have recognized that the failure

8

to advise an employee of his/her right to take . . . leave 'may constitute interference with an employee's FMLA rights if it causes the employee to forfeit FMLA protections.'") (quoting Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1224 (S.D. Cal. 1998)).  The rationale for this rule, under which an employer's failure to give notice plus actual harm amounts to interference, is straightforward:

> [T]he purpose of the regulations enacted by the DOL ... is to ensure that employers allow their employees to make informed decisions about leave .... The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 144 (3d Cir. 2004), holding modified in other respects by, Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009) (quoting Nusbaum v. CB Richard Ellis, Inc., 171 F. Supp. 2d 377, 385-86 (D.N.J. 2001)).

Here, ECC Corporation had an unambiguous duty to notify Ms. Jarry of her rights under the EFMLEA.  That duty became even more important when Ms. Jarry sought to work from home, because her expressed reasons for requesting remote accommodations aligned precisely with the situation protected by the EFMLEA:  Ms. Jarry's

9

son's school operated on a hybrid schedule, and she had no other childcare options for him on remote learning days. Ms. Jarry alleges no such notice was provided to her at any time, factual pleadings which the Court takes as true at this juncture. See Am. Compl. ¶¶ 16-17, 32.

Because Ms. Jarry's complaint alleges actual harm stemming from Mr. Cartier's failure to advise her of her rights, she has stated a plausible claim for relief. The clear harm alleged is that Mr. Cartier fired her for her repeated requests to work from home and her ongoing, unresolved childcare conundrum. Plaintiff's claim is supported by her specific allegation that Mr. Cartier told her that her termination would "help" her with her childcare situation. While Defendants will certainly test these allegations, they are sufficient to defeat a motion to dismiss.

Therefore, with respect to Count I, Defendants' Motion to Dismiss is GRANTED as to her claim of retaliation and DENIED as to her claim of interference.

### C. Count II: RI Healthy and Safe Families and Workplaces Act

Count II alleges Defendants violated R.I. Gen. Laws § 28-57-6 of the Rhode Island Healthy and Safe Families and Workplaces Act ("HSFWA"). See Am. Compl. ¶¶ 38-44. Like its federal counterpart, the HSFWA permits leave when an employee needs "to care for a child whose school or place of care has been closed . . . due to a public

10

health emergency." See R.I. Gen. Laws § 28-57-6(a)(3)(2021). Defendants argue that this provision should not apply to Ms. Jarry because her son's school was partially, not entirely, closed. See Mot. Dismiss 12. As an initial matter, the Court must determine whether the closure/hybrid status of Ms. Jarry's son's school counts as the school being "closed" for the purposes of § 28-57-6 (a)(3).

The HSFWA was enacted in July of 2018 and neither this Court nor the parties have identified any decision of a Rhode Island court interpreting it. However, leave statutes such as the HSFWA are remedial in nature and as such are read liberally by Rhode Island courts. See Pl.'s Obj. to Defs.' Mot. Dismiss 11, ECF No.10; see also 260-30-05 R.I. Code R. § 5.6 (LexisNexis 2021); Prew v. Emp. Ret. Sys. of Providence, 139 A.3d 556, 563 (R.I. 2016) (citing Asadoorian v. Warwick School Committee, 691 A.2d 573, 580 (R.I.1997)). This Court "will not construe a remedial statute in a manner that would defeat its evident purpose." Id. at 563 (quotations omitted).

As noted, under the HSFWA an employee is entitled to leave when their child's school "has been closed by order of a public official due to a public health emergency." R.I. Gen. Laws § 28-57-6 (a)(3). During the timing of events leading to this action, the State of Rhode Island was under an active state of emergency

11

declared by the Governor and the Department of Health.² Thus when school administrators adopted a hybrid schedule pursuant to state guidance, the Court concludes they rendered their school closed by order of a public official within the meaning of the statue. After all, on those days when a student must attend school virtually, the schoolhouse door is quite literally closed to that child. In view of this common-sense reading, the remedial nature of the statute, and the Department of Labor's construction of the word "closure" in the parallel federal statute, see Dept. of Labor, supra, Ms. Jarry's son's school was closed for purposes of the HSFWA.

Next, Defendants renew their argument that Ms. Jarry failed to properly request paid leave as required by the statute and instead only asked to work from home. Mot. Dismiss 13; see also R.I. Gen. Laws § 28-57-6(b) ("Paid sick and safe leave shall be provided upon the request of an employee." (emphasis added)). Given differences in the statutory scheme, Defendants' argument has traction under Rhode Island law that it did not find under federal law.

The HSFWA borrows its enforcement mechanisms and anti-retaliation provisions from the Rhode Island minimum wage and wage

---

² See Exec. Order No. 20-58, Fifty-third Supplemental Emergency Declaration – Phase III Re-Opening (July 29, 2020) https://governor.ri.gov/executive-orders/executive-order-20-58.

12

payment statutes. See R.I. Gen. Laws § 28-57-10 ("Any employee or former employee aggrieved by a violation of the provisions of this chapter shall be entitled to the same protections and relief as under chapters 12 [minimum wage] and 14 [wage payment] of this title."). Those cross-referenced provisions protect an employee from discrimination or discharge because that employee has complained about a violation or instituted and participated in a formal proceeding about a violation. See R.I. Gen. Laws §§ 28-12-16, § 28-14-19.3.[3] The Court finds these provisions are analogous to the anti-retaliation provisions of the FMLA found in 29 U.S.C. § 2615(b) ("It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual [instituted proceedings to vindicate rights or participated in such proceedings]"). Ms. Jarry's state-law retaliation claims must therefore fail. As noted for her federal retaliation claim, she failed to adequately invoke

---

[3] Section 19.3 of Chapter 14 provides:
> No employer, or any person acting on behalf of the employer, shall discharge, threaten, or otherwise discriminate or retaliate against an employee or any other person for asserting, supporting, reporting, or participating in or being asked to participate in the investigation or determination of claim violation or actionable under chapter 12 of this title and/or this chapter.

R.I. Gen. Laws § 28-14-19.3.

13

her right to leave, much less make an active complaint that her rights were being violated at the time of her firing.

As for her state-law interference claim, neither cross-referenced provision contains a general prohibition against interference with the exercise of the rights that is analogous to the FMLA anti-interference provisions found in 29 U.S.C. § 2615(a). See R.I. Gen. Laws §§ 28-12-1 et. seq., § 28-14-1 et. seq. Construing the HSFWA as a matter of first impression, the Court concludes that the argument by which Ms. Jarry may proceed under federal law – that her employer's failure to advise her of her rights plus harm constituted interference – is unavailable to her under the RI statute. She lacks a statutory hook for such an argument and is therefore left with a fatal flaw in her state law claim: seeking statutorily protected leave and requesting to work from home are fundamentally different requests. Therefore, with respect to Count II, Defendants' Motion to Dismiss is GRANTED.

D. Count III: Tortious interference

Finally, Ms. Jarry alleges Mr. Cartier is personally liable for tortiously interfering with her prospective economic advantage by terminating her relationship with ECC Corporation. See Am. Compl. 4-5. To recover for tortious interference with prospective economic advantage, a Rhode Island plaintiff must "prove: '(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an

14

intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff.'" Bisbano v. Strine Printing Co., 737 F.3d 104, 109 (1st Cir. 2013) (quoting L.A. Ray Realty v. Town Council of Cumberland, 698 A.2d 202, 207 (R.I. 1997)).  In addition to these requirements, the interference must be improper, or done with "legal malice."  Id. (citing Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007)); see also Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 919 (R.I. 1987) (quoting Mesolella v. City of Providence, 508 A.2d 661, 669-670 (R.I. 1986))("Malice, in the sense of spite or ill will, is not required; rather legal malice — an intent to do harm without justification — will suffice.").

Here, there is no question the first four elements of the tort are properly alleged.  When Mr. Cartier fired Ms. Jarry, he intentionally terminated her business relationship with the company, causing monetary damages.  The rub, of course, is whether that interference was improper or done with legal malice within the meaning of the tort.

Courts have generally recognized that tortious interference claims are complicated in the employment context.  See Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001) ("Tortious interference takes an intriguing turn in the employment context.").  This is so because while an employee generally "may not sue her employer for interfering with its own contract . . . .

15

a supervisor may be personally liable if he [or she] tortiously interferes with a subordinate's employment relationship." Id. (citations omitted); accord Roy, 525 A.2d at 919 (supervisor potentially liable for tortiously interfering with relationship between subordinate and employer bank); see also Cugini v. R.I. Bd. of Governors for Higher Educ., C.A. No. WC-2008-0722, 2020 R.I. Super. LEXIS 31, at *49-50 (R.I. Super. Apr. 28, 2020).

In acknowledgment that not every firing is a tort, some states have recognized a qualified privilege under which a supervisor will not be liable for employment decisions that are within the scope of his or her supervisory duties, Zimmerman, 262 F.3d at 76 (analyzing Massachusetts law), or when a supervisor is essentially an alter-ego for the corporate form, id. at 76 n.4. While it is clear that Rhode Island recognizes the tort in the employment context,[4] Rhode Island courts have "not developed a crystallized set of definite rules as to the existence or non-existence of privilege to act." Avilla, 935 A.2d at 98 (quoting Belliveau Building Corp. v. O'Coin, 763 A.2d 622, 628 (R.I. 2000)).

---

[4] Because the tort of tortious interference with prospective business relation or expectancy does not require the existence of an actual contract, the Rhode Island Supreme Court has recognized the tort as applicable even to "at-will" employment situations. See Roy v. Woonsocket Inst. for Sav., 525 A.2d 915, 919 (R.I. 1987) (converting claim of tortious interference with contract to tortious interference with prospective contractual relations after concluding employment relationship was "at-will").

Instead, the Rhode Island Supreme Court has instructed that determining whether the interference is improper requires considering a non-exhaustive set of factors, including:

> (1) the nature of the actor's conduct; (2) the actor's motive; (3) the contractual interest with which the conduct interferes; (4) the interests sought to be advanced by the actor; (5) the balance of the social interests in protecting freedom of action of the actor and the contractual freedom of the putative plaintiff; (6) the proximity of the actor's conduct to the interference complained of; and (7) the parties' relationship.

Id. at 98 (quoting Belliveau Building Corp., 763 A.2d at 628 n.3).

Mr. Cartier may have a strong argument that his actions were proper and should be protected under this test, but that argument is necessarily fact intensive and better suited for decision at summary judgment. Here, Ms. Jarry has alleged that instead of fulfilling his obligations to inform her of her leave rights, Mr. Cartier summarily fired her. In doing so, she claims he interfered with her right to leave in violation of federal law, and that claim has survived. This is sufficient to support her claim at this early stage that his action was improper within the meaning of the tort. Therefore, with respect to Count III, Defendants' motion is DENIED.

IV. CONCLUSION

For the reasons explained above, Defendants Motion to Dismiss is GRANTED in part and DENIED in part as to Count I, GRANTED as to Count II, and DENIED as to Count III.

IT IS SO ORDERED.

_____
William E. Smith
District Judge
Date: January 24, 2022